UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

S.M. LEVINE, Individually and Derivatively on
Behalf of THE DOW CHEMICAL COMPANY,

                    Plaintiff,                          Case No. 16-cv-11255

v.                                                      Honorable Thomas L. Ludington

ANDREW N. LIVERIS, et al,

                    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On April 4, 2016, Plaintiff S.M. Levine brought this derivative suit on behalf of the Dow Chemical Company ("Dow"). Compl., ECF No. 12. Levine named as Defendants Andrew N. Liveris, the President, CEO, and Chairman of Dow, as well as members of Dow's Board of Directors and several high level officers for Dow. *Id.* at 5–17. He also names Dow as a nominal defendant. *Id.* at 5. In the Complaint, Levine asserts four claims: breach of fiduciary duty and waste of corporate assets, unjust enrichment, breach of duty of loyalty, and breach of duty of candor. *Id.* at 90–93. Levine's claims arise out of the Board's alleged wrongdoing in ignoring, condoning, and/or covering up systemic violations of federal antitrust laws by Dow and repeated misuse of Dow assets by Defendant Liveris. *Id.* at 2–4. On July 13, 2016, Defendants filed a motion to dismiss, ECF No. 18, alleging that Levine did not properly allege that he satisfied the "contemporaneous ownership" requirement of Fed. R. Civ. Pro. 23.1(b)(1), that Levine did not adequately allege that his demands for the Board to bring suit directly were wrongfully refused, and that Levine's complaint does not state a claim upon which relief can be granted. For the reasons stated below, Defendants' motion to dismiss will be granted.

# I.

When considering a motion to dismiss, a Court must accept the plaintiff's adequately pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the veracity of the factual allegations in Levine's Complaint will be assumed. Plaintiff S. M. Levine is and has been a Dow shareholder at all times relevant to the litigation. Compl. at 5. The Complaint does not allege specific dates of ownership or the number of shares owned.

Defendant Andrew Liveris is the President, CEO, and Chairman of the Board of Directors for Dow. *Id.* at 6. Levine indicates that Liveris has "complete hegemony" over the company and Board and that he demands "fealty and loyalty to him personally" from all directors. *Id.* at 6–7. Defendant Jacqueline K. Barton has been a member of Dow's Board since 1993. *Id.* at 7. She is also a Professor of Chemistry and Department Chair at the California Institute of Technology. *Id.* Defendant James A. Bell joined Dow's Board in 2005. *Id.* at 7–8. Bell is Executive Vice President and Chief Financial Officer of the Boeing Company. *Id.* at 8. Defendant Jeff M. Fettig became one of Dow's Directors in 2003. *Id.* at 9. He has been Lead Director since 2011. *Id.* Fettig also serves as Chairman and CEO of Whirlpool Corporation. *Id.* Defendant Ruth G. Shaw has been a member of Dow's Board since 2005. *Id.* at 10. Shaw is also a senior executive of Duke Nuclear. *Id.* Defendant Dennis H. Reilley has been a member of Dow's Board since 2007. *Id.* He is also Chairman of the Marathon Oil Corporation. *Id.* Defendant Geoffrey E. Merszei was Executive Vice President of Dow from July 2005 until August 2012. *Id.* at 11. From 2005 to 2009, he also served as one of Dow's Directors and as Dow's Chief Financial Officer. *Id.* Defendant Raymond J. Milchovich joined Dow's Board in 2015. *Id.* He is also Lead Director of the Nucor Corporation. *Id.* at 12. Defendant Robert S. Miller became one of Dow's Directors in 2015. *Id.* at 12. Miller is also President and Chief

Executive Officer of International Automotive Components Group. *Id.* Defendant Mark Loughridge has been a member of Dow's Board since 2015. *Id.* at 13. Defendant James Ringler has been a member of Dow's Board since 2001 and is also Chairman of the Teradata Corporation. *Id.* Defendant John B. Hess has been a member of Dow's Board since 2006. *Id.* at 13–14. He is also Chairman and CEO of Hess Corporation. *Id.* at 14. Defendant Ajay Banga joined Dow's Board in 2013. *Id.* Banga also serves as Chairman and CEO of MasterCard Corporation. *Id.* Defendant Paul Polman has been a member of Dow's Board since 2010. *Id.* at 15. Polman is CEO of Unilever. *Id.* Defendant Richard K. Davis became one of Dow's Directors in 2015. *Id.* He is also Chairman and CEO of U.S. Bancorp. Defendant Arnold Allemang has been a member of Dow's Board since 1996. *Id.* at 16.

Besides the Director Defendants, Levine also named several Dow officers as Defendants. Defendant Charles J. Kalil is Executive Vice President and General Counsel of Dow. *Id.* Defendant Jeffrey L. Tate is Dow's Chief Audit Executive. *Id.* Defendant Howard I. Ungerleider is Dow's Chief Financial Officer. *Id.* at 17.

Levine asserts that each individual Defendant either initiated or participated in bad faith in conduct which breached their fiduciary duties. *Id.* at 18. First, he asserts that the Defendants deceived Dow shareholders regarding their efforts to ensure Dow's compliance with federal antitrust laws and regarding their oversight of Dow's defense in the *Urethane Litigation*. *Id. See In re Urethane Antitrust Litigation*, MDL No. 1616, Civil Action No. 04-1616-JWL (D. Kansas). Levine contends that the suit would not have been brought in the first place if adequate internal compliance and antitrust compliance procedures had been in place, and that the action itself should have been settled far earlier in the process. *Id.* Second, he argues that the Defendants enabled and covered up Defendant Liveris's misuse of Dow's corporate assets. *Id.* at 19. In fact,

Levine indicates that Defendants defended and protected Liveris even after he was publically accused of misusing Dow assets for personal use in a wrongful termination suit brought by a former Dow employee. *Id. See Wood v. Dow Chem. Co.*, 72 F. Supp. 3d 777 (E.D. Mich. 2014). Third, Levine argues that Defendants did not legitimately investigate the claims he has made and thus wrongfully rejected his demand that the Board bring suit on behalf of Dow. *Id.* at 19–20. He further argues that Defendants have wasted Dow's assets by retaining biased counsel and conducting a sham investigation of Levine's allegations. *Id.* at 20–21. Finally, he asserts that Defendants have violated their duty of candor by disseminating materially false and misleading press releases and financial statements and by not publically disclosing Liveris's misuse of Dow assets and Dow's financial exposure due to the *Urethane Litigation*. *Id.* at 21.

## A.

The first of Levine's two primary allegations that the Defendants breached their fiduciary duty to Dow focuses on the Defendants' involvement with alleged price fixing in the urethane market. Dow is a major manufacturer of polyether polyol products, which are used to produce polyurethane polymers. *Id.* at 24. Levine contends that the nature of the polyether poloyol product market, in connection with similar markets, made it possible for Dow and certain co-conspirators to engage in "anticompetitive collusion" and inflate "prices above competitive levels." *Id.* at 25.

In 2006, Dow was named as a defendant in the *Urethane Litigation* class action suit, which alleged price fixing in the urethane market. *Id.* at 30. Dow defended itself for approximately 10 years. *Id.* On May 15, 2013, judgment was entered against Dow in an amount in excess of $1 billion. *Id.* After unsuccessfully appealing to the Federal Court of Appeals for the Tenth Circuit, Dow settled the case for $835 million. *Id.* at 30, 81. Dow also settled with

additional plaintiffs who had chosen to not be part of the class action for approximately $450 million. *Id.* at 30. Dow expended tens of millions of dollars in litigation expenses. *Id.* All other defendants to the action settled long before Dow did and for significantly less. *Id.* at 31. Bayer Corp., BASF Corp., and Huntsman International LLC settled the case for $140 million. *Id.*

Levine contends that Defendants "abdicated their business judgment and gave virtually unfettered authority to the Company's trial counsel." *Id.* He also faults Defendants for not suing Dow's trial counsel "in the wake of its obvious malpractice." *Id.* As an example of that malpractice, Levine notes that the "firm had not properly preserved certain *Daubert* and related objections," which resulted in the waiver of those potential arguments. *Id.* Because of that error, Defendant Kalil asked Dow's trial counsel after the trial to end their representation of Dow. *Id.* Levine also faults Defendants for allowing "applicable statutes of limitations to run against those of its officers and directors responsible for the underlying violations of federal antitrust laws and those who acquiesced in it." *Id.* at 32. Levine further asserts that, after being confronted with the claims and evidence against it, Dow and its counsel "'stonewalled' at the direction of Defendant Kalil instead of making reasonable efforts to resolve the claims pending." *Id.* Because of that, Dow rejected settlement proposals which were significantly below the amount Dow eventually settled for. *Id.* Levine also asserts that Defendants wrongly covered up Dow's "massive likely liability" and "falsely represented Dow's exposure therein as not material." *Id.* at 32–33.

**B.**

Second, Levine alleges that Defendants breached their fiduciary duties through their response to allegations and evidence that Defendant Liveris was misusing Dow assets. *Id.* at 33. As primary support for his allegations on this point, Levine refers to the complaint in *Wood v. Dow Chem. Co.*, 72 F. Supp. 3d 777 (E.D. Mich. 2014). That suit was settled in February of

2015. *See Wood v. Dow Chem. Co.*, No. 14-cv-13049, ECF No. 29. In the suit, Ms. Wood, a fraud investigator at Dow, alleged "that the Company's money had financed vacations, sports junkets and other 'perks' for Defendant Liveris and his family." Compl. at 34. Those alleged perks included "a safari; hundreds of thousands of dollars for Super Bowl parties; and $13,000 in uniforms for his son's basketball team." *Id.* Levine also alleges that Dow's internal auditors conducted a series of investigations from 2008 to 2013 which revealed potential improprieties in Defendant Liveris's spending. *Id.* Ms. Wood was fired after alerting her supervisors of the apparent wrongdoing. *Id.* at 35–36. Levine alleges that Defendant Kalil encouraged Dow's internal auditors to ignore Liveris's questioned expenses after the allegations of wrongdoing arose. *Id.* at 37.

Levine faults Defendants for "using Dow's funds to silence Ms. Wood" by settling the case despite the legitimacy of Ms. Wood's claims. *Id.* at 36. He also protests that Defendants took "no steps to thoroughly investigate [Liveris's] wrongful conduct or to require an accounting by an independent auditor so that Dow could have an independent determination of the extent of such wrongdoing so that Dow can be fully repaid." *Id.* Levine acknowledges that Liveris reimbursed Dow $719,923 for personal expenses charged to the company between 2007 and 2010, but Levine believes that Liveris owes far more to Dow. *Id.* He also argues that Defendants have breached their fiduciary duty to Dow by giving Liveris a "very generous 'golden parachute' contract" which entitled Liveris to "approximately $53 million in cash, stock, and tax reimbursement payments." *Id.* at 39. Although the Complaint does not specifically identify the event this payment is predicated on, it appears that the compensation will occur after Liveris's retirement, which is itself predicated on completion of a proposed merger between Dow and DuPont. *See id.*

Levine further asserts that Defendants breached their duty of candor by not conducting an "independent accounting or public disclosure of the full extent of [Liveris's misuse] of Dow's assets." *Id.* at 37.   Specifically, Levine asserts that Dow's proxy statements "misrepresented Dow's true state of affairs, particularly with regard to Defendant Liveris' compensation and the ineffectiveness of the Company's financial controls." *Id.* at 38. He points to discrepancies between Dow's 2011 proxy statement and the testimony of Mr. Doug Anderson, Dow's former Chief Internal Auditor. *Id.* at 39. Mr. Anderson testified that the proxy statement wrongly portrayed Dow's investigation into and findings regarding Liveris's spending habits as more routine and less serious than it actually was. *Id.*

## C.

Levine next alleges, in general terms, that the Defendants individually and collectively breached their fiduciary duties to Dow. *Id.* at 40. He asserts that Defendants had control, access, and authority sufficient to make them aware of the wrongdoing occurring within Dow. *Id.* at 42–43. He also contends that Defendants had a duty to "exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of the Company." *Id.* at 43. He particularly asserts that the Defendants violated Dow's Code of Business Conduct and Code of Financial Ethics. *Id.* at 46–51.

## D.

Prior to bringing suit, Levine made several demands that the Board bring suit. *Id.* at 66. Levine's first demand letter was sent on March 4, 2013. *Id.* at 67. In that letter, he requested that the Board bring suit against Dow's officers who were involved in the alleged conspiracy to price-fix, against Dow's in-house counsel for "recklessly" allowing Dow to proceed to trial in the *Urethane Litigation*, and against Dow's management for their "failure to disclose the

egregious conduct" which was the subject of the *Urethane Litigation*. March 4, 2013 Demand Letter, ECF No. 12, Ex. 4. The Board responded to that demand letter by assigning the matter to the Board's Governance Committee. Compl. at 67. That assignment occurred at the Board's April 10–11, 2013, meeting. *Id.* Also on April 11, 2013, the Governance Committee reviewed the demand letter and retained counsel, Kenneth J. Nachbar, to conduct a full evaluation of the claim. *Id.* at 67–68. Levine faults the Governance Committee for retaining counsel so quickly, arguing that no detailed analysis of the counsel's "independence, disinterestedness and objectivity" could have been conducted. *Id.* at 68. Thus, Levine argues that counsel had been pre-selected. *Id.* On May 7, 2013, Nachbar indicated to Levine that the investigation would take several months.

Levine argues that Mr. Nachbar "lacked the independence, disinterestedness and objectivity required under the circumstances." *Id.* Mr. Nachbar had previously represented Dow and has "a long history of uniformly recommending the rejection of shareholder demands such as those made by" Levine. *Id.* Levine alleges that Mr. Nachbar was selected for that very reason, and that Mr. Nachbar concealed the "sham nature" of the investigation by refusing to answer "a number of basic questions." Those questions included whether the Board considered disqualifying any Directors from serving on the Governance Committee because of the allegations made in the demand letter and whether Mr. Nachbar performed a conflict check before accepting the representation. *Id.* at 71–73.

After a judgment of $1.2 billion dollars was entered against Dow in the *Urethane Litigation*, Levine filed two additional demand letters. *Id.* at 74. In the demand letter of May 21, 2013, Levine asserted that Dow was wrongly refusing to record the potential liability for the judgment on Dow's financial statements. ECF No. 12, Ex. 5. In the July 30, 2013, demand letter,

Levine requested that Dow bring suit against its trial counsel for inadequate representation at trial. ECF No. 12, Ex. 6.

On August 7, 2013, the Board sent a letter to Levine which explained the reasons why the Board was rejecting his March 4, 2013, demand. ECF No. 12, Ex. 9. In the letter, the Board explained that there "were no viable claims to be brought against any of the Company's former or current officers, directors or employees under Delaware or Michigan law." *Id.* at 1. The Board found no evidence that any of Dow's officers or directors were complicit in the alleged price-fixing, failed to exercise oversight over antitrust compliance efforts, or failed to monitor or otherwise mishandled the *Urethane Litigation*. *Id.* The Board also explained that even if viable claims against Dow's officers, directors, or employees existed, the claims were likely now barred by the statute of limitations. *Id.* at 2. It additionally reasoned that any potential recovery would be a "very small fraction" of the amount at issue in the *Urethane Litigation*, and thus would not be a worthwhile pursuit. *Id.* The Board further explained that it would not bring suit against the Dow officers, directors, and employees allegedly responsible for the antitrust violations because doing so would involve Dow asserting that antitrust violations had actually occurred, which would "severely undermine" Dow's efforts to overturn the *Urethane Litigation* judgment on appeal. *Id.* The Board further referenced "the legal fees the Company would incur" and "the possible reputational harm to the Company from pursuing claims" as factors in its decision. *Id.*

Levine discounts the Board's response by arguing that the investigation was biased because "no testimony of any witness was taken under oath and the most material of witnesses were never even interviewed." Compl. at 76. He argues that the Board's business judgment was inadequate because Mr. Nachbar "cherry-picked" facts, resulting in a "whitewashed" recommendation. *Id.*

Levine communicated with Mr. Nachbar on several occasions during the summer and fall of 2013. *Id.* at 78–79. Mr. Nachbar represented that Levine's July 30, 2013, demand letter was scheduled to be considered by the Board at its mid-December meeting. *Id.* at 78. On November 28, 2013, Levine sent another demand letter to the Board. ECF No. 12, Ex. 7. In the letter, Levine argued that Mr. Nachbar and his firm had refused to respond to fundamental questions, was biased, and was wasting Dow's assets. *Id.* He further demanded that Dow commence suit against its trial counsel in the *Urethane Litigation*. *Id.*

On December 20, 2013, the Board sent Levine a letter which explained that it was rejecting his July 30, 2013, demand to bring suit. ECF No. 12, Ex. 10. The letter noted that the appeal in the *Urethane Litigation* was still pending and that the statute of limitations to bring a legal malpractice claim had not even begun to run yet. *Id.* Accordingly, the Board declined to negotiate for tolling agreements regarding a legal malpractice claim with its trial counsel. *Id.*

After the judgment in the *Urethane Litigation* was affirmed by the Federal Court of Appeals for the Tenth Circuit, Levine sent his September 29, 2014 demand letter. ECF No. 12, Ex. 8. In the demand, Levine reiterated his previous demands regarding the *Urethane Litigation* and also requested that Dow obtain "written agreements tolling the running of all statutes of limitations applicable to the claims identified in my March 4, 2013 and subsequent demand letters." *Id.* at 2. On December 1, 2014, Mr. Nachbar sent Levine a letter which indicated receipt of Levine's demand and explained that, based on the reasons previously articulated, Dow believed that commencing the requested litigation would be counterproductive while Dow was appealing the judgment. ECF No. 12, Ex. 14. Rather, Mr. Nachbar indicated that Dow would consider the demand after Dow had exhausted its appeals. *Id.*

- 10 -

After the parties in *Wood v. Dow Chem. Co.* settled, Levine sent the October 31, 2015,
demand letter. ECF No. 12, Ex. 3. He requested that Dow bring suit against Defendants Liveris
and Kalil for the improper expenditures alleged in *Wood*. *Id.* Levine further asked that Dow
bring suit against several Dow officers and Dow's independent auditor for issuing false and
misleading financial statements. *Id.* On February 6, 2016, the Board told Levine that it was
considering the demand and would notify Levine when the Governance Committee had chosen
an attorney to act on its behalf. Compl. at 82. Levine did not receive any additional information
from the Board before commencing this action in April of 2016. *Id.* at 83. Defendants' motion to
dismiss is now before the Court.

## II.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that
support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-
movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439.
The pleader need not provide "detailed factual allegations" to survive dismissal, but the
"obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain
sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"
and "the tenet that a court must accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

A court faced with a Rule 12(b)(6) motion must typically limit its consideration to the
pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure

- 11 -

12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir. 2009). Conversion to a motion for summary judgment, however, "'should be exercised with great caution and attention to the parties' procedural rights.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366). A court has discretion regarding whether to convert a motion to dismiss to a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008). The Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

In addition to the general rule—that a document must be referred to in the complaint and central to the claim—the Sixth Circuit has permitted courts to take judicial notice of some documents of public record. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). For example, a court may take judicial notice of other court proceedings, including transcripts. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). However, taking judicial notice of documents has been limited to allow only "the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697 (collecting cases).

Levine is bringing a derivative suit. The pleading requirements for shareholder derivative actions are governed by Fed. R. Civ. Pro. 23.1. In explaining the pleading standard under the identical Delaware Chancery Rule 23.1, *see McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001), the Delaware Supreme Court explained that pleadings under Rule 23.1

> must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a). Rule 23.1 is not satisfied by conclusory statements or mere notice pleading. On the other hand, the pleader is not required to plead evidence. What

the pleader must set forth are particularized factual statements that are essential to the claim.

*Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

Further, a shareholder may prosecute a derivative suit only if demand is excused or the "directors wrongfully refused a demand to sue." *McCall*, 239 F.3d at 816 (citing *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). The analysis of whether demand was properly made or excused is determined under "the substantive law of the state of incorporation. *McCall*, 239 F.3d at 815 (citing *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 108–09 (1991). Because Dow is incorporated in Delaware, Delaware law applies in this case.

### III.

In their motion to dismiss, Defendants make three arguments. First, they argue that Levine has not pleaded sufficient facts to satisfy Federal Rule of Civil Procedure 23.1(b)(1)'s contemporaneous ownership requirement. Second, they argue that Levine has not pleaded sufficient facts to show that his demands were wrongfully refused. Third, they argue that Levine's complaint does not state a claim upon which relief may be granted.

### A.

Defendants first argue that Levine has not adequately alleged that he owned Dow stock during the time the Defendants were allegedly engaged in wrongdoing. In order to have standing to bring a derivative suit, the plaintiff must adequately allege that he or she was a "shareholder or member at the time of the transaction complained of." Fed. R. Civ. Pro. 23.1. *See also In re Bank of New York Derivative Litig.*, 320 F.3d 291, 297 (2d Cir. 2003). Further, "[a] formulaic recitation of the derivative standing requirements will not suffice." *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015). A plaintiff cannot simply employ "the language of the rule in [his] complaint" and satisfy the contemporaneous ownership

- 13 -

requirement. *Id. See also Sprando ex rel. Int'l Game Tech. v. Hart*, No. 3:10-CV-00415-ECR, 2011 WL 3055242, at *2 (D. Nev. July 22, 2011) (noting that "generalized pleading, absent any facts indicating when Plaintiff purchased his shares, fails to comply with Rule 23.1's procedural requirements); *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010) ("Plaintiffs do not identify *when* they purchased Accuray shares.") (emphasis in original); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003) (indicating that the complaint must indicate "when plaintiffs bought stock" in the company).

In his complaint, Levine alleges only that "Plaintiff S.M. Levine is and has been a Dow shareholder continuously and at all relevant times referenced herein." Compl. at 5. In response to Defendants' argument that he has not adequately alleged standing to bring a derivative suit, Levine has attempted to file a declaration proving that he has owned Dow stock since 1989. ECF No. 24. He has also attached an affidavit to his response to Defendants' motion to dismiss further clarifying the date on which he purchased Dow stock. ECF No. 25, Ex. 1. However, because those documents are not included or referenced in the pleadings, they cannot be considered at the motion to dismiss stage. *Weiner*, 108 F.3d at 89. The Court declines to transform this motion to dismiss into a motion for summary judgment.

Levine also argues that Rule 23.1 does not require him to allege the exact date of purchase. Neither of the cases that Levine cites in support of this proposition directly address the specificity with which a plaintiff must allege that he or she satisfies the contemporaneous ownership requirement. *See In re Bank of New York Derivative Litig.*, 320 F.3d at 297 (discussing the continuing wrong doctrine); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 605 (S.D. Fla. 1991) (noting simply that defendants had not adequately shown that the plaintiff

- 14 -

was not a shareholder). On the contrary, several cases, cited above, clearly indicate that the plaintiff cannot merely allege that he was a shareholder at the relevant times, as Levine does. *See also Smith v. Stevens*, 957 F. Supp. 2d 466, 469 (S.D.N.Y. 2013) (rejecting as inadequate a complaint which alleged "only that the plaintiff was a shareholder during a "Relevant Period").

Accordingly, Levine has not adequately alleged the basis for derivative suit standing. He requests in his brief that, should the Court determine he lacks standing, he be granted leave to file an amended complaint pursuant to Fed. R. Civ. Pro. 15(a), which allows a party to amend a pleading with the court's leave. The Court would allow Levine to file an amended complaint alleging specific dates of stock ownership, but Levine's complaint suffers from other fatal flaws, discussed below. Accordingly, Levine's request to file an amended complaint will be denied as futile.

## B.

Defendants further argue that Levine has not complied with Federal Rule of Civil Procedure 23.1(b)(3)'s requirement that Levine allege facts showing that his demand that Dow bring suit was wrongfully refused. Rule 23.1(b)(3) requires the plaintiff to "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members." The analysis in cases where demand has been made is different from the analysis in cases where the plaintiff is alleging that the demand requirement is excused. *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). "By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del.

1990).[1] In other words, the business judgment rule applies to review of the Board's demand refusal. *Id.*

The business judgment rule is the "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). The rule is meant to protect corporate decision-making from second-guessing by courts. *Brown v, Ferro Corp.*, 763 F.2d 798, 800 n.2 (6th Cir. 1985). When demand has been made and rejected, "the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption." *Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996).  In short, Levine bears the burden of alleging particularized facts which "raise a reasonable doubt that (1) the board's decision to deny the demand was consistent with its duty of care to act on an informed basis, that is, was not grossly negligent; or (2) the board acted in good faith, consistent with its duty of loyalty." *Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti*, No. CV 9714-VCG, 2015 WL 2270673, at *24 (Del. Ch. May 8, 2015).

### 1.

Defendants argue that Levine has not met his burden of raising a reasonable doubt that Dow's denial of his demand to bring suit regarding the antitrust litigation was wrongful. Levine responds, first, by asserting that his demand was wrongfully refused because the Board lacked

---

[1] Plaintiff argues that, despite the fact that he made demands on the Board, he did not concede the Board's independence forever as a matter of law. Rather, he makes clear that he is challenging the Board's independence and due care in responding to his demand. Plaintiff is correct. Although he has waived his opportunity to argue that demand was unnecessary, he can still argue that the Board's refusal was not the result of an independent, disinterested investigation and decision. *See Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996). The "[f]ailure of an otherwise independent-appearing board or committee to act independently is a failure to carry out its fiduciary duties in good faith or to conduct a reasonable investigation.*" Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 75 (Del. 1997).

independence. He next argues that the Board refused his demand in bad faith. Third, Levine argues that the Board's refusal violated its duty of care.

**i.**

Levine has not adequately pleaded particularized facts creating doubt that the Board was independent. By making a demand, Levine has conceded that the Board possesses the independence necessary to respond. Accordingly, he must allege particularized facts indicating why, specifically, the Board's actual decision was not independent and disinterested. *See Levine*, 591, A.2d at 212; *Friedman v. Maffei*, No. CV 11105-VCMR, 2016 WL 1555331, at *8 (Del. Ch. Apr. 13, 2016). Levine's argument that the Board as a whole was biased because the directors were accused of wrongdoing in the demand is not sufficient to demonstrate a wrongful refusal.

Levine argues that the Board's decision was not independent and disinterested because the Board appointed an investigatory committee which was composed "*entirely* of named defendants." Pl. Brief at 20, ECF No. 25 (emphasis in original). He thus apparently argues that the Board was required to "form a perfectly independent special litigation committee," citing *Booth Family Trust v. Jeffries*, 640 F.3d 134, 143 (6th Cir. 2011). *Booth* involved a derivative suit where the plaintiff did not make a demand and the corporation formed a special litigation committee to consider whether to seek dismissal of the suit.  Generally, when demand is made, a Board's refusal to bring suit will be respected unless it is wrongful. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del. 1981). Demand refusal will be analyzed under the business judgment rule, as already explained. *Id.* at 784 n.10. The *Zapata* court held that a board which is disqualified from making a decision regarding whether to seek dismissal of a properly initiated shareholder derivative suit may regain control of the litigation by forming a special litigation

- 17 -

committee. *Id.* at 786 ("We do not think that the interest taint of the board majority is per se a legal bar to the delegation of the board's power to an independent committee composed of disinterested board members. The committee can properly act for the corporation to move to dismiss derivative litigation."). Because special litigation committees arise in cases where the board is otherwise unqualified to consider the demand, the special litigation committee "has the burden of establishing its own independence by a yardstick that must be "like Caesar's wife"— "above reproach." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1055 (Del. 2004) (quoting *Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985)).

In this case, however, Levine made a demand on the Board. Accordingly, he tacitly acknowledged that the Board was capable of properly and independently reviewing his claim. Levine clearly disagrees with the Board's refusal to bring suit, but that refusal must be analyzed under the deferential business judgment rule, not under the heightened scrutiny applied to special litigation committees seeking to distance themselves from a board unqualified to make the decision. *See City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022, 1030 (N.D. Cal. 2013). By making the demand, Levine evidenced the expectation that the board would review the demand and make the decision. Even though, as he now argues, the Board could have created an entirely independent special litigation committee to review the demand, it was not required to do so. Accordingly, the fact that the composition of the investigation committee resembled that of Dow's Board as a whole is not evidence of wrongful refusal. *Id.* Likewise, the mere fact that the members of the investigation committee unanimously rejected Levine's demands is not a particularized fact which creates a reasonable doubt that the refusal was wrongful.

Levine also argues that demand was wrongfully refused because the attorney selected to investigate the demand was improperly chosen. He specifically argues that the attorney, Kenneth Nachbar, had been preselected by the Board, had previously represented Dow, and had a "well-established reputation" for recommending the rejection of shareholder demands. Pl. Br. at 22. These allegations and arguments are insufficient to establish wrongful refusal. To begin with, Delaware law provides that a board member is "fully protected in relying in good faith upon . . . information, opinions, reports, or statements presented . . . by any other person as to matters the member reasonably believes are within such other person's professional and expert competence and who has been selected with reasonable care by or on behalf of the corporation." 8 Del. C. § 141(e).

Levine argues that, because Mr. Nachbar was retained on the same day the demand was referred to the investigation committee, he was "preselected" as part of an effort by Defendants to reach the preordained conclusion that the demand would be rejected. This bare allegation is not sufficiently particularized to create reasonable doubt that Mr. Nachbar was not selected with reasonable care. To begin with, Levine admits that Mr. Nachbar and his firm are "highly competent with respect to corporate governance issues and litigation." Compl. at 69. Thus, Levine's argument is merely that Mr. Nachbar was selected without adequate investigation and lacked independent judgment. However, as Defendants note, the Board may have investigated Mr. Nachbar prior to the meeting. Further, Levine argues that Mr. Nachbar's prior relationship with Dow disqualified him from representing Dow regarding Levine's demand. But the fact that Dow had previously retained Mr. Nachbar actually supports the conclusion that Dow had previously investigated Mr. Nachbar and determined his suitability for handling shareholder

demands. Levine does not allege any particularized facts suggesting that Mr. Nachbar was unsuited to investigate Levine's demand.

Levine also argues that Mr. Nachbar lacked independence because he had previously represented Dow in high profile legal matters and had a reputation for recommending the rejection of shareholder demands. In *In re Consumers Power Co. Derivative Litig.*, 132 F.R.D. 455, 474 (E.D. Mich. 1990), the plaintiffs argued that the demand denial was wrongful because the "investigation and ultimate decision relied too extensively on biased information from the attorneys who had previously defended the corporation and individual defendants over similar claims of mismanagement and other wrongdoing." The *Consumer Power* court rejected that argument, reasoning that plaintiffs had "not presented the court a scintilla of factual evidence suggesting that [the attorney or his firm had] . . . violated any professional obligation to the client. *Id.* at 478. Likewise, plaintiffs did not present facts demonstrating that counsel had given "biased or inaccurate advice" to the Board. *Id. See also Belendiuk v. Carrion*, No. CV 9026-ML, 2014 WL 3589500, at *6 (Del. Ch. July 22, 2014) ("Belendiuk makes no attempt to allege that Cravath was not selected with reasonable care or that the matters on which Cravath offered advice were outside its professional competence."). Even though Mr. Nachbar might have previously represented Dow and previously recommended rejection of shareholder demands, that does not establish sufficient bias or lack of independence to make Mr. Nachbar's selection unreasonable. Levine has offered only general, conclusory allegations regarding the process by which Mr. Nachbar was selected. Thus, Levine has not rebutted the presumption that Mr. Nachbar was retained in good faith and after a reasonable investigation.

**ii.**

Levine next argues that the investigation by Mr. Nachbar and the investigation committee was conducted in bad faith. Levine's argument here retreads much of the same ground Levine covers in his argument that the Board's decision was not independent. He asserts that the investigation committee and Mr. Nachbar prejudged the merits of the suit and thus predetermined the outcome of the investigation. In support, Levine cites *London v. Tyrrell*, No. CIV.A. 3321-CC, 2010 WL 877528, at *15 (Del. Ch. Mar. 11, 2010), and *Abella v. Universal Leaf Tobacco Co.*, 546 F. Supp. 795, 799 (E.D. Va. 1982). The courts in both those cases indicated skepticism about whether a special litigation committee had predetermined the outcome of the investigation and thus was not independent. But, as already explained, the standard in cases involving special litigation committees is different from demand refusal cases, where the business judgment rule is applied. *London* and *Abella* are thus inapposite.

Levine also argues that the $1.2 billion judgment entered against Dow in the *Urethane Litigation* contradicted the Board's conclusion in its demand rejection letter that there were no viable claims to be brought against Dow's former officers, directors, or employees. But "mere disagreement with the Committee's ultimate conclusion, as well as its subsidiary conclusions leading thereto, [is] insufficient to raise a reasonable doubt that the Board acted in good faith and on an informed basis." *Andreotti*, 2015 WL 2270673, at *27. In *Andreotti*, the company had been sanctioned in a separate action for making an "untenable" and "mendacious" argument. *Id.* at *28. The plaintiff argued that the board had acted in bad faith in refusing to bring suit because of that decision, reasoning that the board "could not reasonably determine that the $1 billion verdict and the since-affirmed Sanctions Order [were] not products of *some* wrongdoing or culpability on the part of *at least some* members of the Board or senior officers of the Company." *Id.* (emphasis in original). The *Andreotti* court rejected that argument, explaining that "Plaintiff does

- 21 -

not identify just what the breach of duty involved would have been, nor does the Plaintiff identify what the damages would have been, as would make such litigation an irresistible asset for the Company to pursue." *Id.*

That reasoning applies with considerable force here. The jury verdict in the *Urethane Litigation* might provide evidence that some Dow employees were involved in wrongdoing, but Levine has not identified which particular Defendants they are. Likewise, Levine has only made conclusory allegations regarding the potential damages Dow could recover. Further, Levine has not pleaded specific factual allegations regarding the contentions made and established in the *Urethane Litigation*. While the Court can take judicial notice of the existence of that litigation, the Court cannot take judicial notice of the allegations made or conclusions reached within that litigation. *See Passa*, 123 F. App'x at 697. Because the mere fact that Dow was sued for antitrust law violations, chose to take the case to trial, and sustained a verdict against it is insufficient to establish that the Board acted in bad faith, Levine has not adequately pleaded wrongful refusal.

Additionally, the Board explained in the demand rejection letter that, even if there were potential claims to be brought against the officers, directors, and employees allegedly engaged in wrongdoing related to the antitrust violations, the Board still believed that doing so would be counterproductive. Specifically, the Board mentioned that bringing suit would undermine Dow's then-ongoing appeal of the judgment entered against it,[2] would incur substantial legal fees and

---

[2] Levine argues that, because the lawsuit was settled in February 2016, this rationale no longer applies. But Levine initiated this derivative suit in April 2016, only two months after the settlement. Levine's argument is thus counterintuitive. To the extent he argues that Dow should have settled the *Urethane Litigation*, the settlement resolved that issue. To the extent he argues that suit should be brought against Defendants for mishandling the litigation, he gave Dow very little time to investigate its post-settlement options once the resolution of the *Urethane Litigation* had been finalized. In neither scenario has Levine pleaded particularized facts which raise reasonable doubts about the Board's good faith. Levine argues that Mr. Nachbar's December 1, 2014, letter, which indicates that Dow would consider Levine's demand "on its merits" if the judgment in the *Urethane Litigation* remained in effect after the appeals process, indicates that a comprehensive investigation had not yet been undertaken. Letter, ECF No. 12, Ex. 14. But that letter also indicated that it was premised on "the reasons previously communicated to [Levine]" regarding the decision to not bring suit. *Id.* To the extent the letter asserted that Levine's demands would

- 22 -

other costs, and would cause Dow "reputational harm." Demand Rejection Letter at 2, ECF No. 12, Ex. 9. "A board may in good faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits." *In re INFOUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007). The decision to settle a lawsuit, to take a lawsuit to trial, or to seek contribution from persons "involved in the conduct underlying a suit against the corporation [are] business decision[s] within the discretion of the board." *White v. Panic*, 783 A.2d 543, 553 (Del. 2001). Levine has not pleaded any specific facts which raise reasonable doubt that the Board's decision, on these grounds, was not made with the best interests of Dow in mind. Accordingly, Levine has not raised a reasonable doubt that the Board acted in good faith.

Levine also argues that the refusal of Defendants' counsel to provide information regarding the Board's investigation raised reasonable doubts about the good faith of the investigation. He asserts that any inadequacies in his Complaint stem from the Board's refusal to provide information regarding the nature of its investigation. In *Scattered*, the Delaware Supreme Court rejected a similar argument made by the plaintiffs. 701 A.2d at 78. The *Scattered* Court emphasized that the plaintiffs had "not taken advantage" of their right under 8 Del. C. § 220 to "inspect minutes, reports, and other books and records . . . *targeted* at the process and findings of the Board, the Special Committee and the Executive Committee in acting on this demand." *Id.* (emphasis in original). *See also Friedman v. Maffei*, No. CV 11105-VCMR, 2016 WL 1555331, at *16 (Del. Ch. Apr. 13, 2016) (holding that because the plaintiff did not seek access to the investigatory committee's report, the generalized reasoning in the demand rejection letter did not raise reasonable doubt that the investigation was conducted in good faith).

be further considered after the appeals process, it indicates only that the company would reconsider the value of bringing suit. The remainder of Levine's exhibits make clear that the Board did conduct an investigation into the merits of his claims prior to rejecting his demand.

Levine argues that the description of the investigation in the demand rejection letter was conclusory and thus that he was placed in a "Catch-22" whereby Levine was required to plead particularized factual allegations regarding the insufficiency of the investigation, but the Board had refused to provide any information about the procedures used. *See In re Consumers Power Co. Derivative Litig.*, 132 F.R.D. at 462.[3] However, this argument conflicts with Levine's alternative representation that there was no need to make a books and records demand under 8 Del. C. § 220 because "there were ample facts already available to him to allege with particularity how the Board's" refusal was wrongful. Pl. Brief. at 26. If Levine had ample facts, then there is no excuse for the lack of particularity in his allegations. Further, the Delaware Supreme Court has explicitly rejected the argument that the pleading standard of 23.1 should be lessened simply because plaintiffs may have difficulty satisfying the standard without the benefit of discovery. *Scattered Corp.*, 701 A.2d at 78. Levine did not avail himself of all "tools at hand" and thus has not demonstrated reasonable doubt as to whether his demand was wrongfully refused.

### iii.

Levine next argues that the Board did not act in an informed manner and with due care in refusing his demand that the Board sue the individual Defendants for breaching their duty of oversight concerning the antitrust violations and litigation. In particular, he cites *Barovic v. Ballmer*, where the court held that the plaintiff had called the sufficiency of the Board's investigation into dispute by specifically identifying a set of witnesses that were not interviewed.

---

[3] In further support of that argument, Levine cites *City of Orlando Police Pension Fund v. Page*, where the court found that the Board's refusal to make the committee's report public, combined with the conclusory nature of the demand rejection letter, created reasonable doubt as to whether the refusal was in good faith. 970 F. Supp. 2d 1022, 1030 (N.D. Cal. 2013). But this reasoning conflicts with the Delaware Supreme Court's clear direction that the burden is on the plaintiff to seek information regarding the demand refusal. *See Grimes v. Donald*, 673 A.2d 1207, 1218 (Del. 1996); *Scattered Corp.*, 701 A.2d at 78. The Board is not required to preemptively make the details of its investigation public.

72 F. Supp. 3d 1210, 1215–16 (W.D. Wash. 2014). He also argues that the Board improperly turned the investigation over to Mr. Nachbar, thus abdicating its responsibilities.

In order to raise a reasonable doubt that the Board's lack of due care in investigating made the demand refusal wrongful, Levine must allege particularized facts indicating that the Board's behavior constituted gross negligence, which means "reckless indifference or actions that are without the bounds of reason." *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008). *See also Belendiuk v. Carrion*, No. CV 9026-ML, 2014 WL 3589500, at *6 (Del. Ch. July 22, 2014). Making that showing is difficult because there is "no prescribed procedure that a board must follow" in responding to a demand. *Levine*, 591 A.2d at 214. "In any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ." *Mount Moriah Cemetery on Behalf of Dun & Bradstreet Corp. v. Moritz*, No. CIV.A. 11431, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991). *See also Gatz v. Ponsoldt*, No. CIV.A. 174-N, 2004 WL 3029868, at *5 (Del. Ch. Nov. 5, 2004). Likewise, the Board does not necessarily need to receive a written report before deciding to refuse the demand. *Belendiuk*, 2014 WL 3589500 at *6.

In the Complaint, Levine alleges that "no testimony of any witness was taken under oath and the most material of witnesses were never even interviewed. Compl. at 76. Levine further alleges that "no testimony was taken of the non-management directors, the most critical of witnesses." *Id.* If the plaintiff specifically identifies witnesses possessing material information that the Board did not interview, there might be reasonable doubt that the investigation was adequate. *See Page*, 970 F. Supp. 2d at 1032 (finding that any reasonable investigation would have included an interview of the identified witnesses). But Levine's allegations here are too conclusory. He appears to simply argue that the non-management directors possessed crucial

information and that, because there was no evidence they were interviewed, the Board did not interview those directors. In *Copeland v. Lane*, the court rejected a similar argument, explaining that the plaintiff had not identified "individuals who should have been interviewed but were not, how those unidentified individuals had knowledge that was unique and unobtainable without those interviews, and how those interviews if taken would have altered the Board's decision to refuse demand." No. 5:11-CV-01058 EJD, 2012 WL 4845636, at *8 (N.D. Cal. Oct. 10, 2012). Levine has not specifically alleged what information these directors had which would not have been uncovered elsewhere during the investigation. For that reason, the Court cannot conclude that a failure to interview unspecified non-management directors, if indeed they were not interviewed, constituted gross negligence.

Levine next argues that the Board's investigation was inadequate because the demand rejection letter only mentioned reviewing the depositions and trial record from the *Urethane Litigation*. He argues that those documents could not provide insight into whether the individual Defendants "breached their fiduciary duties of oversight." Pl. Br. at 29. Levine also argues that the Board abdicated its responsibility for conducting the investigation to Mr. Nachbar. These allegations fall far short of raising a reasonable doubt that the Board's investigation was grossly negligent. First, Levine has not pleaded particularized facts indicating that the Board's investigation was *pro forma* or superficial. In the demand rejection letter, the Board indicated that the Governance Committee had "reviewed, among other materials, substantial portions of the deposition and trial record in the Urethane Litigation . . . , including the sworn deposition and trial testimony of the former Dow employees allegedly involved in the price-fixing activities alleged in that litigation." Demand Rejection Letter at 1. Because the Board reviewed testimony given by those Dow employees accused of being involved in the price-fixing, the investigation

was not grossly negligent. The investigation focused on the employees that were closest to the controversy and thus most likely to be found culpable. Levine might believe that the Board should have investigated other individuals as well, but the decision regarding who to investigate and how to investigate them is typically one about which reasonable minds can disagree. *Mount Moriah Cemetery on Behalf of Dun & Bradstreet Corp.*, 1991 WL 50149, at *4. Levine has not satisfied his burden of pleading particularized facts which indicate that any decision the Board made regarding how to conduct the investigation were grossly negligent.

Further, a board is entitled to "rely on competent counsel as its agent" in conducting interviews and otherwise investigating. *In re Take-Two Interactive Software, Inc. Derivative Litig.*, No. 1:06CV5279 LTS/DFE, 2009 WL 1066251, at *7 (S.D.N.Y. Apr. 21, 2009). *See also Katell v. Morgan Stanley Grp., Inc.*, No. CIV. A. 12343, 1995 WL 376952, at *10 (Del. Ch. June 15, 1995) (explaining that "heavy reliance on . . . competent attorneys does not render [the] investigation unreasonable"). As already explained, Levine has admitted that Mr. Nachbar is competent and has not pleaded particularized facts suggesting that his investigation was biased or otherwise inadequate.

Accordingly, Levine has not met his burden of pleading particularized facts which create a reasonable doubt as to whether his demand was wrongfully refused. For that reason, Levine's claims arising out of Defendants' involvement in the antitrust litigation and alleged wrongdoing will be dismissed.

**2.**

As to Levine's claims involving Defendant Liveris's alleged misuse of funds, Defendants argue that Levine's suit is premature because that demand is still under consideration by the

Board. Levine counters by asserting that the Board's delay in responding to his demand constitutes constructive denial.

In cases where the plaintiff has initiated a derivative suit before the Board has formally responded to the demand, courts use two different standards. *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 976 (Del. Ch. 2013). When the Board has taken no action in response to a demand at all, the analysis is a "fact-specific reasonableness standard." *Steinberg ex rel. Bank of Am. Corp. v. Mozilo*, 135 F. Supp. 3d 178, 183 (S.D.N.Y. 2015). That reasonableness analysis focuses on the "complexity of the technological, quantitative, and legal issues raised by the demand." *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117–18 (D. Del.). When a board "takes some action in response to a demand" but has not yet issued a "formal response," *Steinberg*, 135 F. Supp. 3d at 184, "the methods and manner in which the board has chosen to act on the demand represent judgments entitled to the benefit of the business judgment rule if taken in a manner that was informed and in good faith." *Rich*, 66 A.3d at 977.

In this case, Levine sent a demand letter to the Board regarding Defendant Liveris's alleged misuse of Dow funds on October 31, 2015. Levine further alleges that counsel for the Board responded to that demand on February 6, 2016, and indicated that the Governance Committee would review the demand. Compl. at 82. That email also indicated that the Board would contact Levine when the Governance Committee had chosen an attorney to act on its behalf. *Id.* Two months later, Levine filed this suit. The Board has not discussed the status of the investigation into this demand any further with Levine. However, Defendants represent in their briefs that the results of the investigation and recommendation by the Governance Committee

will be presented to the Board in October 2016. Levine does not appear to contest that representation. *See* Pl. Br. at 39.

Accordingly, the Board has taken some action in response to Levine's demand. Although the status and details of the investigation have not been disclosed to Levine, the Board has not simply ignored his demand. For that reason, the protection of the business judgment rule applies to the Board's method and manner of responding to the demand. *Rich*, 66 A.3d at 977.

Levine has not adequately alleged facts which suggest that the Board's investigation has been uninformed or otherwise conducted in bad faith. Rather, he argues that the demand involved simple issues which could have been sufficiently investigated in only a few months. But Levine's demand asserted "very substantial misuse" of Dow assets and "material financial statement fraud" that occurred over a number of years. Oct. 31, 2015, Demand, ECF No. 12, Ex. 3. Regardless of whether these allegations had already been investigated by other entities within Dow, the Board's decision to take Levine's demand seriously and conduct a comprehensive investigation cannot be considered bad faith. Because Levine has not alleged any specific acts of misconduct or delay involving the investigation, other than the mere fact that it is still ongoing, he has not alleged facts sufficient to overcome the protections of the business judgment rule. *See Steinberg*, 135 F. Supp. 3d at 185 (dismissing a derivative action brought under a constructive denial rationale six months after demand because the plaintiff had not alleged particular facts suggesting that the investigation constituted a breach of fiduciary duties). Levine's claims relating to Defendant Liveris's alleged misuse of Dow assets will be dismissed without prejudice. Levine may refile after receiving a response to his demand if he wishes to challenge the response, or if the Board does not timely respond after considering the Governance Committee's recommendation at the Board's October 2016 meeting.

## IV.

Accordingly, it is **ORDERED** that Defendants' motion to dismiss, ECF No. 18, is **GRANTED.**

It is further **ORDERED** that Counts One, Two, Three, and Four of Plaintiff S. M. Levine's Complaint are **DISMISSED with prejudice** insofar as they relate to Defendants' involvement in the antitrust litigation and violations.

It is further **ORDERED** that Counts One, Two, Three, and Four of Plaintiff S. M. Levine's Complaint are **DISMISSED without prejudice** insofar as they relate to Defendant Liveris's alleged misuse of Dow assets.

Dated: October 19, 2016                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 19, 2016.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager

---